Case 4:20-cv-00788 Document 37 Filed on 03/11/21 in TXSD Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
March 11, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED HEALTH PRODUCTS, INC., | § § § | |
| Plaintiff, | § | |
| VS. | § § | CIVIL ACTION NO. 4:20-CV-788 |
| ANIMAL HEALTH INTERNATIONAL, INC., *et al*, | § § § § | |
| Defendants. | § | |

## **ORDER**

Before the Court is a Motion for Summary Judgment[1] filed by Defendants Animal Health International, Inc. ("Animal Health"), Patterson Veterinary Supply, Inc. ("PVS"), and Patterson Logistics Services (collectively, the "Defendants") (Doc. No. 24). Plaintiff United Health Products, Inc. ("Plaintiff") responded (Doc. No. 27), and Defendants replied (Doc. No. 30). After careful consideration, the Court **DENIES** the Motion for Summary Judgment.

### I. Background

According to the pleadings, Plaintiff manufactures and produces healthcare and medical products for resale by distributors. (Doc. No. 15 at 2). Plaintiff had an "ongoing distribution agreement" with Animal Health[2] that was modified in January 2017. (*Id.*). The agreement (Doc. No. 16-1), states that Animal Health "has no obligation to purchase any Products except as stated in a written purchase order." (*Id.* at 2). It also provides for automatic renewals of the agreement

---

[1] Defendants informed the Court by footnote that they believe Plaintiff's claims "can and should" be disposed of in a 12(b)(6) or 12(c) motion. (Doc. No. 24 at 6 n.2). Nonetheless, they have styled the motion as a Rule 56 Motion for Summary Judgment and their arguments are based on the Rule 56 standard. Accordingly, the Court shall treat the motion as such.

[2] None of the pleadings or briefings explain the relationship between the Patterson defendants and Animal Health, nor do they make separate arguments on behalf of any one entity. However, the distribution agreement header names: "Animal Health International, a Patterson Company" as the contracting party. (Doc. No. 16-1).

1 / 14

and states that either party may terminate the agreement with or without cause by written notice of thirty days. (*Id.* at 4).[3] At some point in 2017, an employee of PVS, Doug Jones, allegedly requested products from Plaintiff, who agreed to sell them for $438,596. (Doc. No. 15 at 2). Neither party has introduced any evidence of this request or exchange to the Court. Nevertheless, PVS employee Larry Hudson exchanged text messages with Plaintiff's agent between January 3, 2018, and May 1, 2018, broadly discussing business engagements between the two companies. (Doc. No. 20, Ex. A). Plaintiff sent PVS an invoice for $438,596 on December 20, 2017, for large quantities of Hemostyp Gauze with a term of net 120 (due April 20, 2018). (Doc. No. 15 at 3; Doc No. 20, Ex. B). On February 2, 2018, the Hemostyp Gauze was shipped via UPS to a PVS warehouse in Houston. (Doc. No. 15 at 3; Doc. No. 20, Ex. C).

On May 7, 2018 after the April invoice date passed, Plaintiff sent a Demand for Payment letter to PVS Accounts Payable, which explained that goods were delivered to the PVS Houston Warehouse and that Plaintiffs had been attempting to reach Defendants about the invoice but without success. (Doc. No. 15 at 3; Doc. No. 20, Ex. D). On May 8, 2018, PVS's attorney, Joel Funk, sent a letter back to Plaintiff claiming "suspicious conduct" by Plaintiffs, and terminating the distribution agreement. (Doc. No. 15 at 3; Doc. No. 20, Ex. E). The letter also served "as a demand" for Plaintiffs to (1) make arrangements to pick up the goods that were delivered without a purchase order from the Houston Warehouse by May 15, 2018 or else "the goods will be discarded in whatever manner [Defendant] may choose"; (2) issue a written statement to confirm

---

[3] The distribution agreement contains a choice of law provision designating Colorado law applies: "This Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Colorado, without reference to choice of law provisions." (Doc. No. 16-1). Nevertheless, the parties cite to and rely upon Texas law, and the choice of law provision has not been raised. Accordingly, the Court will follow the parties' lead, assume Colorado law and Texas law are the same for purposes of this motion, and apply Texas law. *Smollen v. United States*, 46 F.3d 65 (5th Cir. 1995) ("It is well established in this Circuit that, absent some manifest injustice, parties are ordinarily bound by the theory of law they argue in the district court."). The Court feels safe utilizing this approach as nothing the Court decides herein is contingent upon enforcement of the contract.

that the agreement was terminated, no order was placed, and Defendants are not in debt to Plaintiffs; and (3) cease communication except between attorneys. (*Id.*).

Plaintiff alleges that it attempted to comply with the letter, but was "unable to successfully get their product back." (Doc. No. 15 at 4). Following the May 8 letter, Plaintiff's VP Louis Schiliro emailed Funk on May 11 to "set up a time to talk," explaining: "The product in Houston has been there for some time and it was my understanding some of it was taken for samples. Which we do not know how much. We also, do not know what is left and how it was stored . . . . In the end we will work out whatever we can to continue to work with you . . . ." (Doc. No. 20, Ex. F). Funk replied the same day with the following email:

> Your questions are answered in my letter:
> 
> - The decision to terminate is final and not subject to reconsideration.
> - *Animal Health and Patterson Vet will perform a reconciliation before tendering the unordered product.*
> - After this message, I will only communicate with United Health Products' counsel.

*Id.* (emphasis added).

On June 21, 2018, Plaintiff's agent John Gerhardt unrelatedly emailed several agents of Defendants with a "BOGO" (buy one get one free) promotion for Hemostyp products. (Doc. No. 20, Ex. G). Funk emailed Gerhardt on June 25, asking him to cease communication because PVS "is no longer selling any of [Plaintiff's] products or participating in any promotions for those products." (*Id.*). Gerhardt emailed Funk back to inform him that PVS had contacted him initially about the BOGO promotion, and expressed confusion about the communications. (*Id.*). Funk promptly responded that PVS "has no intention of doing any further business with [Plaintiff]. Honoring the demand to cease contact would be in your, and [Plaintiff's] best interests." (*Id.*). According to the pleadings, on January 7, 2019, Funk wrote that "if [Plaintiff] continues this

misguided effort, [Defendants] will vigorously defend any claim and pursue all available remedies against UHP." (Doc. No. 15 at 4). At this point, Plaintiff's attorney stepped in and wrote to Funk, seeking "an amicable resolution on this outstanding bill." (Doc. No. 20, Ex. H). According to the briefings, Defendants have not paid Plaintiff for any products, and no attempt to resolve the problem has been successful.

Consequently, Plaintiff sued Defendants in the 215th Judicial District Court, Harris County, Texas for fraud based on statements made in Funk's email to Plaintiff, and for undue enrichment based on Defendants' alleged keeping and/or re-selling of goods for which they never paid. Defendants timely filed a Notice of Removal to this Court based on diversity jurisdiction under 28 U.S.C. § 1332. (Doc. No. 1). Defendants filed a motion for judgment on the pleadings (Doc. No. 7), and Plaintiff filed an opposed motion to amend (Doc. No. 11). The Court granted Plaintiff leave to file an amended complaint and denied the Defendants' motion as moot. (Doc. No. 14). Plaintiff also filed a motion to supplement the complaint (Doc. No. 18), which the Court granted (Doc. No. 19). Thereafter, Defendants filed a Motion for Summary Judgment (Doc. No. 24), Plaintiff responded (Doc. No. 27), and Defendants replied (Doc. No. 30). Plaintiff filed an opposed motion to supplement its response (Doc. No. 31), which the Court granted (Doc. No. 33). Before the Court, therefore, is Defendants' Motion for Summary Judgment (Doc. No. 24).

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the Court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248.

### III. Analysis

A. <u>Defendants' Hearsay and Authentication Objections</u>

Before addressing the substance of the summary judgment motion, the Court must first address Defendants' objection, raised in their reply brief, to Plaintiff's summary judgment evidence. In the body of its response to Defendants' motion, Plaintiff included three screenshots. (Doc. No. 27 at 7–9). The first image is a screenshot of a "Certificate of Processing," that Plaintiff received from its sterilization company, Sterigenics ("Sterigenics Screenshot"). According to its reply brief, Plaintiff manufactured and shipped the product, which it planned to sell to Defendants, to its sterilization company, who in turn stamped the products with customer lot numbers. (*Id.* at 6). The screenshot of the Certificate does not show any pricing or describe the services or products, but it lists the customer item numbers, correlative customer lot numbers, date of the work order (December 26, 2017), and date of the Certificate (January 4, 2018). (*Id.* at 7). The screenshot is

not accompanied by a time stamp, signature, sworn statement, indication of how it was captured, or any other indicia of its origin.

The second two images are screenshots of "Product Details" of "Hemostyp Trauma Gauze" as it is listed on Defendants' website ("Products Screenshots"). The first Products Screenshot is a picture of the gauze for purchase, with product details. (Doc. No. 27 at 8). It also includes at least part of a URL: "pattersondental.com/supplies/itemdetail/071012544." (*Id.*). The second of the two screenshots appears to be a zoomed in version of the first and shows that the product has a customer lot number that matches one of the customer lot numbers from the Sterigenics Certificate of Processing (*Id.* at 6). Neither of these screenshots has a date, timestamp, or accompanying affidavit.

Defendants argue that the Court must disregard the screenshots because Plaintiff did not make any attempt to authenticate them, such as provide an accompanying affidavit or declaration. (Doc. No. 30 at 13). A court may only consider admissible evidence on summary judgment. Fed. R. Civ. P. 56(c)(1). Documents supporting or opposing summary judgment must be properly authenticated to be admissible as evidence. *Van Alstyne v. Gc Servs.*, NO. H-08-3175, 2009 U.S. Dist. LEXIS 148923, *9–10 (S.D.Tex. Dec. 11, 2009). Authentication is satisfied by "evidence sufficient to support a finding that the matter in question is what the proponent claims." Fed. R. Evid. 901(a); *see R.R. Mgmt. Co., LLC v. CFS Louisiana Midstream Co.*, 428 F.3d 214, 219–20 (5th Cir. 2005). A document can be authenticated with testimony by a person with knowledge that the matter is what it is claimed to be Fed. R. Evid. 901(b)(1).

The Court finds that the Products Screenshots as they have been presented are plainly inadmissible. Rule 901 sets out a non-exhaustive list of ways to authenticate evidence, which include submitting "[t]estimony that an item is what it is claimed to be." Fed. R. Evid. 901(b)(1).

Defendants did not submit any testimony, such as an affidavit, to authenticate the screenshot. Further, the screenshots are not self-authenticating documents under Federal Rule of Evidence 902. *See Moore v. Marriott Int'l, Inc.*, CV 20-2366, 2020 WL 7258827, at *3 (E.D. La. Dec. 10, 2020) (finding a screenshot without any indicia to support a finding that the item is what the proponent claims it is to be inadmissible); *see also Doe v. Compact Info. Sys., Inc.*, 3:13-CV-5013-M, 2015 WL 5437702, at *5 (N.D. Tex. Aug. 25, 2015), report and recommendation adopted, 3:13-CV-5013-M, 2015 WL 5439037 (N.D. Tex. Sept. 15, 2015) (finding that an unauthenticated screenshot is inadmissible hearsay); *Brown v. JNH Investments, Inc.*, 416CV00675ALMCAN, 2017 WL 3205716, at *2 (E.D. Tex. July 7, 2017), report and recommendation adopted, 4:16-CV-675, 2017 WL 3193513 (E.D. Tex. July 27, 2017) ("Under Federal Rule of Evidence 901, a proponent "must produce evidence"—such as an affidavit—"to support a finding that the item is what the proponent claims it is" to authenticate an item of evidence such as a website screenshot or printout.").

As it appears in the body of the briefing, the Sterigenics Screenshot falls into the same category as the Products Screenshots: inadmissible. The Court notes, however, that Plaintiff included an identical screenshot of the Certificate of Processing accompanied by an affidavit as a Supplemental Exhibit in response to Defendants' motion. (Doc. No. 34). The affidavit is sufficient to authenticate this screenshot. Therefore, the Court can consider the Sterigenics Screenshot as summary judgment evidence.

B. Fraud

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In Texas, "a fraud cause of actions requires material misrepresentation, which was false, and which was either known to be false when made

or was asserted without knowledge of its truth, which was intended to be acted upon, which was relied upon, and which caused injury." *Formosa Plastics Corp. United States v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (cleaned up). The Fifth Circuit has required plaintiffs to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Omni USA, Inc. v. Parker-Hannifin Corp.*, 798 F.Supp.2d 831, 836 (S.D. Tex. 2011) (quoting *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 206–07 (5th Cir. 2009).

The economic-loss rule bars some tort claims by plaintiffs who have only suffered losses relating to the subject of a contract. *See Sw. Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 494 (Tex.1991). "In determining whether a tort claim is merely a repackaged breach of contract claim, a court must consider: 1) whether the claim is for breach of duty created by contract, as opposed to a duty imposed by law; and 2) whether the injury is only the economic loss to the subject of the contract itself." *Hurd v. BAC Home Loans Servicing, LP,* 880 F.Supp.2d 747, 763 (N.D. Tex. 2012) (cleaned up); *see also Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986) ("The nature of the injury most often determines which duty or duties are breached. When the injury is only the economic loss to the subject of a contract itself, the action sounds in contract alone."). The Supreme Court of Texas reiterated this principle in *Sharyland Water Supply Corp. v. City of Alton,* 354 S.W.3d 407 (Tex. 2011), noting that the economic-loss rule applies when the damages sued for arose from the "breach of a duty created under contract, as opposed to a duty imposed by law." *Id*; *see also Auriti v. Wells Fargo Bank, N.A.*, 3:12-CV-334, 2013 WL 2417832, at *5 (S.D. Tex. June 3, 2013).

Defendants contend that there are no genuine issues of material facts surrounding Plaintiff's fraud claim, and that they should be awarded summary judgment as a matter of law.[4] Defendants argue first that the economic-loss rule bars Plaintiff's recovery, because Plaintiff's claims "are premised on Defendants' alleged failure to perform pursuant to the terms of the Distribution Agreement." (Doc. No. 24 at 12). They emphasize that apart from the contract, Defendants owed no duty to Plaintiff. (*Id.* at 13). According to Defendants, the alleged damages are directly related to non-performance of the distribution agreement, and therefore sound in contract. (*Id.* at 12).

Defendants also argue that Plaintiff failed to meet the heightened pleading standard required by Federal Rule of Civil Procedure 9(b) because it did not "allege *any* facts to support *any* inference of fraudulent intent in connection with Defendants' supposed failure to perform reconciliation." (Doc. No. 24 at 16). In addition, Defendants contend that Plaintiff failed to delineate fraud as to each defendant. (*Id.*).

In response, Plaintiff argues that the economic-loss rule does not bar recovery here because Defendants "had a tort duty not to defraud its supplier even if and when product was imperfectly tendered." (Doc. No. 27 at 4). Concerning the heightened pleading standard, Plaintiff contends that courts do not require that a complaint "state all the facts pertinent to the case in order to satisfy the

---

[4] Defendants also claim that Plaintiff is unable to recover the requested damages as a matter of law due to a Limitation of Liability provision in the distribution agreement. (Doc. No. 24 at 19). Section 4.6 of the agreement reads:

> Neither party shall be liable to the other pursuant to this agreement for amounts representing indirect, special, incidental, consequential, or punitive damages of the other party *arising from the performance or breach of any terms of this agreement* if such party has been made aware of the possibilities of damages.

(Doc. No. 16-1) (emphasis added). This clause covers a breach of contract. This Court does not find the claim for fraud in this case to be a repackaged breach of contract claim. This limited liability clause is not relevant to the claims here. "Texas courts may not enforce a contractual limitation of liability as a defense to an intentional tort such as fraud." *Helms v. Southwestern Bell Tel. Co.*, 794 F.2d 188, 193 (5th Cir.1983).

requirements of Rule 9(b)." (*Id.*). Plaintiff urges that at the very least, there is a dispute of fact concerning Funk's state of mind when he wrote the email that "promised reconciliation." (*Id.* at 5).

The Court is unpersuaded by Defendants' arguments. The economic-loss rule does not bar Plaintiff's fraud claim. First, only defendant Animal Health is covered by a contract, so this argument cannot possibly apply to other defendants. Moreover, despite some ambiguities in the pleadings, it is clear to the Court that for whatever reason, Plaintiff shipped its products to Defendants. The distribution agreement, which Defendant claims is the contract that bars recovery in tort, is not the subject of this fraud claim. As the distribution agreement itself states, "Animal Health has no obligation to purchase any Products except as stated in a written purchase order. This Agreement governs all purchase orders . . . ." (Doc. No. 16-1). Both parties agree that there *was no* purchase order. (Doc. No. 30 at 6–7). The alleged damages incurred by Plaintiff are the result of alleged fraud arising from Defendants' actions in receiving and keeping a shipment of goods that it did not authorize via purchase order. Plaintiff alleged that it would have picked up its "imperfectly tendered" products "had the plaintiff not been lead [sic] to believe that a reconciliation was occurring . . . ." (Doc. No. 27 at 4). Regardless of the relevance of a general distribution agreement, which, again, does not cover the shipment of goods unauthorized by any purchase order, Defendant allegedly acted fraudulently in its communication with Plaintiff after receiving the goods. The economic-loss rule does not bar fraud and fraudulent inducement claims because the "parties to a contract ha[ve] an independent duty not to commit the intentional tort of fraud." *Barcenas v. Fed. Home Loan Mortg. Corp.*, CIV.A. H-12-2466, 2013 WL 286250, at *5 (S.D. Tex. Jan. 24, 2013); *see also Cardinal Health Solutions, Inc. v. Valley Baptist Med. Ctr.*, 2009 WL 150942, at *20 (S.D. Tex. Jan. 21, 2009) (holding that the economic-loss doctrine

did not bar a fraudulent misrepresentation claim because the parties to the contract had an independent duty not to commit the intentional tort of fraud); *Experian Info. Solutions, Inc. v. Lexington Allen, L.P.*, 2011 WL 1627115, at *12 (E.D.Tex. Apr. 7, 2011) (holding that the economic-loss rule did not apply to fraud claims, including claims for fraud in the performance and fraudulent omission).

Similarly, the Court finds Defendants' arguments that Plaintiff has not met the federal pleading standard for fraud to be unavailing. To reiterate, the Fifth Circuit construes Rule 9(b) "to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Flaherty*, 565 F.3d at 206–07. Plaintiff's allegations of fraud are based upon Funk's email to Louis Schiliro stating that "Animal Health and Patterson Vet will perform a reconciliation before tendering the unordered product," easily satisfying the first three requirements. (Doc. No. 15 at 6). To show why the statements were a fraudulent material misrepresentation, Plaintiff alleges that Defendants promised to perform a reconciliation but "never intended any outcome except to arrogate the product retain 100% of the goodwill and receipts . . . and then to stall and threaten their way out of paying." (*Id.*); *see Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983) (describing that a misrepresentation generally must be a false statement of fact or a promise of future performance made with the intent not to perform). Moreover, Plaintiff alleges that Defendants "made false representations [in the email] to induce the Plaintiff to further expose itself to financial harm." (*Id.*). In fact, Plaintiff alleges that it "relied on this misstatement by not immediately retrieving its half-million dollars' worth of product." (*Id.*). Defendants do not contest that they did not pursue any reconciliation, but instead retort: "So what?" (Doc. No. 24 at 15). The Court finds that Defendants' statement that that they "will perform a reconciliation before tendering the unordered

product," and their subsequent failure to do so suffice to plead an allegedly false representation with intent to induce reliance. Plaintiff has met the heightened pleading standard.

Defendants emphasize that Plaintiff failed to establish fraud as to each individual defendant. (Doc. No. 24 at 16). Plaintiff has conceded that it was not sure of the relationship among defendants: "Patterson Veterinary, Patterson Warehouse and Patterson Companies, all seem to operate jointly in tandem with each other." (Doc. No. 15 at 3). Moreover, Funk sent the email with the alleged misrepresentation and signed his letter as follows: Animal Health International, Inc, followed by Funk's signature, his printed name, and his title "General Counsel." (Doc. No. 20, Ex. E). As this Court previously noted, Animal Health appears to be a subsidiary of the Patterson companies (the distribution agreement is titled "Animal Health, a Patterson Company"). Thus, it is reasonable for Plaintiff to assume Funk, in sending the letter, was acting in his capacity as representative for all Defendants.[5]

Courts have noted that "lumping" defendants together will not violate Rule 9(b) when the allegations elsewhere describe the nature of defendant's relationship to a scheme. *See Ogbonna v. USPLabs, LLC*, No. EP-13-CV-347-KC, 2014 WL 2592097, at *11 (W.D. Tex. June 10, 2014). While that does not describe the precise scenario here, Plaintiff's belief that the various defendants act together, and that Funk spoke for all of them, deserves a similarly tailored analysis. Here, Funk is the General Counsel for Animal Health, "a Patterson Company," and various Patterson companies were involved in the communications with the Plaintiffs leading up to this suit. (*See* Doc. No. 15). Neither side has segregated the various defendant entities in any meaningful way: it is not clear what each entity does in relation to one other, nor is it clear what each entity did in this

---

[5] This ruling does not bar Defendants from raising the separate corporation issue again either by a separate, and hopefully clearer, motion for summary judgment, or by a directed verdict motion. Plaintiff has asked for discovery to uncover the specifics of what happened (Doc. No. 27 at 2), so the Court will not address this issue of distinguishing the defendants until after appropriate discovery.

case. Considering that Funk, who made the alleged misrepresentation, is General Counsel for Animal Health, "a Patterson Company," and his email stated that "Animal *and* Patterson Vet will perform a reconciliation," (Doc. No. 20, Ex. F), the Court finds that a jury could reasonably find against all Defendants.

C. Unjust Enrichment

Finally, Defendants assert that Plaintiff's unjust enrichment claim fails as a matter of law because a valid contract exists and there is no genuine issue of material fact. "Unjust enrichment characterizes the result of a failure to make restitution of benefits either wrongfully or passively received under circumstances that give rise to an implied or quasi-contractual obligation to repay." *N. Cypress Med. Ctr. Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 204 (5th Cir. 2015). When a valid contract covers the subject matter of the dispute, there can generally be no recovery under unjust enrichment; however, the Supreme Court of Texas has held that "in some circumstances, overpayments under a valid contract may give rise to a claim for restitution or unjust enrichment." *Sw. Elec. Power Co. v. Burlington N. R.R. Co.*, 966 S.W.2d 467, 469 (Tex. 1998). Again, at best only Animal Health is covered by the contract in question.

More importantly, Defendants readily admit that they were sent and received the shipment of product to their Houston Warehouse outside of the contract. (Doc. No. 20, Ex. E). They do not refute that they have not paid Plaintiff for these goods. (*See* Doc. Nos. 24 & 30). Obviously, Plaintiff has alleged that Defendants have kept the benefit of the shipment by means of fraudulent misrepresentation. (Doc. No. 15 at 6–7). Finally, even if the distribution agreement governs the shipment,[6] a plaintiff may recover "under the unjust enrichment theory when one person has

---

[6] The distribution agreement is between Animal Health and Plaintiff. In contrast, most of the allegations in the complaint are directed at various Patterson entities. It is not clear to the Court that the distribution agreement *could* bar an unjust enrichment claim in this scenario when the alleged unlawful actions were committed by other defendants not party to the contract. Without further clarification from either Plaintiff or Defendants about which

obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). Therefore, the Court finds that a reasonable trier of fact could find that Defendants' "failure to make restitution of benefits either wrongfully or passively received under circumstances [ ] give rise to an implied or quasi-contractual obligation to repay." *Cigna Healthcare*, 781 F.3d at 204.

## IV. Conclusion

For the foregoing reasons, this Court **DENIES** Defendants' Motion for Summary Judgment (Doc. No. 24).

Signed at Houston, Texas, this 11 day of March, 2021.

Andrew S. Hanen
United States District Judge

---

defendants are responsible for specific actions and how the various defendants relate to one another other, the Court can be guided only by the information available in the current briefings.